Amy L. Bennecoff Ginsburg (034423)
LawHQ, P.C.
299 S. Main St. #1300
Salt Lake City, UT 84111
385-285-1090
amy.ginsburg@lawhq.com

*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Joshua Champion and Trent Alvord,<br><br>Plaintiffs,<br>v.<br><br>Hameet Sethi, Jon Reyes, DeShawn Tavilla, Jessie Sotomayor, and Andrew Zamora.<br><br>Defendants. | No.<br><br>CLASS ACTION COMPLAINT<br><br>Jury Trial Demanded |

**INTRODUCTION**

1. In May 2019, a massive spam texting operation called APEX SMS was exposed. APEX SMS stored in its database the randomly obtained telephone numbers of over 80 million people and sent tens of millions of automated text messages to unsuspecting nonconsenting recipients.

2. APEX SMS has operated under various names, including Mobile Drips and Beacon Media Ventures.

3. At the time APEX SMS was exposed, additional phone numbers were still being added to the database.

4. The architects, creators, and principal users of APEX SMS are Defendants Jon Reyes, DeShawn Tavilla, Hameet Sethi, Jessie Sotomayor, and Andrew Zamora.

5. Defendants have sent tens of thousands of spam text messages using APEX SMS.

6. Plaintiffs Joshua Champion and Trent Alvord have individually received hundreds of spam text messages that were sent by Defendants using APEX SMS.

7. The text messages Defendants sent to Plaintiffs violated multiple provisions of the Telephone Consumer Protection Act ("TCPA"). 47 U.SC. 227.

8. Plaintiffs bring this action for themselves and for other similarly situated people in the United States to enjoin these abusive practices, and for damages.

## JURISDICTION AND VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA. 47 U.S.C § 227.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a significant portion of the events giving rise to this lawsuit occurred in this District.

## PARTIES

11. Plaintiff Joshua Champion is a resident of the District of Columbia.

12. Plaintiff Trent Alvord is a resident of Utah County, Utah.

13. Defendant Hameet Sethi is a resident of Maricopa County, Arizona.

14. Defendant Jon Reyes is believed to be a resident of Roy County, Utah.

15. Defendant DeShawn Tavilla is a resident of Maricopa County, Arizona.

16. Defendant Andrew Zamora is a resident of Maricopa County, Arizona.

17. Defendant Jessie Sotomayor is a resident of McLennan County, Texas.

## FACTUAL ALLEGATIONS

The Spam Operation and Defendants Connections

18. Defendants have operated APEX SMS since at least 2018.

19. When it was discovered, the APEX SMS database ("Database") contained not only 80 million telephone numbers, but other significant information including the users and admins of APEX SMS.

20. Each Defendant was identified by name and gmail address in the Database.

21. On March 15, 2018, the first users accounts were created in the Database. One was for Defendant Reyes and another for Defendant Tavilla.

22. The accounts for Reyes and Tavilla had the user role of "admin," indicating they were the initial administrators and creators of APEX SMS.

23. Shortly thereafter accounts for Defendants Sethi, Sotomayor, and Zamora were created.

24. The accounts for Sethi, Sotomayor, and Zamora also had the user role of "admin."

25. Defendants Sethi, Sotomayor, and Zamora publicly list their connection with Mobile Drip and Beacon Media Ventures.

26. Sethi says on his LinkedIn account that he can help other people become richer through the SMS platform MobileDrip.com. *Hameet Sethi | LinkedIn*, https://www.linkedin.com/in/hameet-paul-sethi-6bb38432/ (last accessed June 23, 2022).

27. Defendant Sotomayor lists MobileDrip.com on his Twitter account. *Jessie Sotomayor | Twitter*, https://twitter.com/marketingjessie (last accessed June 23, 2022).

28. Defendant Zamora lists Beacon Media Ventures on his LinkedIn profile and says he is the Operations Manager. *Andrew Zamora | LinkedIn* https://www.linkedin.com/in/andrew-zamora-87465a148/ (last accessed June 23, 2022).

29. The URL for dev.mobiledrip.com previously redirected to apextracking.net, indicating that Apex SMS and Mobile Drip are one and the same system.

30. Also, the websites MobileDrip.com and BeaconMediaVentures.com had identical verbiage, images, and layout indicating that Mobile Drip and Beacon Media Ventures are one and the same.

31. MobileDrip.com and BeaconMediaVentures.com both advertised they are a "high-volume SMS marketing" platform.

32. The APEX SMS spam operation was run out of Maricopa County, Arizona.

33. As an admin and participant in APEX SMS, both Reyes and Sotomayor engaged in business dealings in Arizona, placed commercial emails and calls to Arizona, and purposefully availed themselves of Arizona.

34. Defendants are the architects and individuals running what is likely one of the largest spam operations in the United States—a spam operation that has stored the phone numbers of over 80 million random people and that has sent tens of millions of automated spam text messages without consent.

*Plaintiffs' Telephone Spam*

35. Champion is the residential subscriber of the cell phone number 202-492-0336. He uses this number for personal use and does not use it in any business. He registered this number on the Do Not Call Registry ("DNCR") on June 11, 2019.

36. Alvord is the residential subscriber of the cell phone number 661-537-5038. He uses this number for personal use and does not use it in any business. He registered this number on the DNCR on May 16, 2019.

37. Plaintiffs never provided their phone numbers to Defendants, never had a relationship with Defendants, and never gave Defendants permission to contact them.

38. Defendants knowingly and willfully texted Champion at least 327 times and Alvord at least 78 times.

39. None of the messages identified the sender, nor the entity on whose behalf the messages were sent, as required by law.

40. Here are just four examples of spam text messages sent by Defendants:

i. To Joshua Champion on March 6, 2021 from 641-609-4730
Adam his system is the most amazing thing since cut cheese
morningmap9.com/4z91zh65yjqf

ii. To Joshua Champion on March 7, 2021 from 681-540-1135
Adam it does not make sense Y neone would miss out on this
happyplace9.com/2ncd73dknj5z

iii. To Trent Alvord on April 26, 2021 from 833-872-1407
Nelson ur discounts have been applied to ur policy
39a58210.com/2bao6ybhajps

iv. To Trent Alvord on April 27, 2021 from 833-247-8434
Nelson we just viewed this clip ce97c.com/5y3a2lxoayo1 it is just you're looking for

41. The text messages addressed Joshua Champion and Trent Alvord by the names of Adam and Nelson, respectively. However, Plaintiffs have never gone by or used these names.

42. The data from the exposed APEX SMS database contained Trent Alvord's phone number 661-537-5038 and had the first name of Nelson for this phone number.

43. The fact that Trent Alvord received spam text messages addressed to "Nelson" and this is the exact same incorrect name contained in the APEX SMS database indicates that the text messages were likely sent through the APEX SMS system.

44. Champion received his first spam text message from Defendants on June, 20, 2019.

45. The text messages sent to Plaintiffs all came from different phone numbers.

46. The text messages all contained different and random domains, such as morningmap9.com and ce97c.com.

47. Both MobileDrips.com and BeaconMediaVentures.com advertised how its messaging system could rotate through different phone numbers and different domains when sending text messages to avoid getting blocked, which is exactly what happened with the text messages Plaintiffs received.

48. When the URLs in these text messages were clicked, they redirected to other domains such as 20minutecashsystem.com and pushbuttonsystem2.com. These two websites are operated by another "admin" of APEX SMS named Justin Francisco.

49. Champion and Alvord received text messages that promoted a small handful of the same websites.

50. Both the text messages themselves and the websites offered to sell loans, credit monitoring services, insurance, and other similar products.

51. At least 15 of the text messages contained domains that were registered by andrew@alphamarketinggroup.biz. This email address belonged to Defendant Zamora, indicating Zamora was involved in sending these text messages.

52. At least 390 of the text messages redirected to URLs that contained the tracking ids 993 and 3893. Justin Francisco told Plaintiff's counsel that the ids 993 and 3893 belong to Sethi and are the ids Sethi uses when promoting Francisco's websites.

53. Champion and Alvord received text messages that contained Sethi's tracking ids, further indicating all the text messages came from APEX SMS.

54. In addition to 327 text messages that Joshua Champion has traced back directly to Sethi, Champion has received another 213 text messages that incorrectly address him as "Adam."

55. Because Adam is the incorrect name for Joshua Champion, on information and belief, Defendants Reyes, Tavilla, Sethi, Sotomayor, or Zamora, whether acting individually or in concert, sent these other 213 text messages.

56. In addition to 78 text messages that Alvord has traced back to Zamora and Sethi, Alvord has received another 191 text messages that incorrectly address him as "Nelson."

57. Because Nelson is the incorrect name for Trent Alvord, on information and belief, Defendants Reyes, Tavilla, Sethi, Sotomayor, or Zamora, whether acting individually or in concert, sent these other 191 text messages to Alvord.

58. In total, just these two Plaintiffs have received a total of 809 spam text messages which all have ties to APEX SMS.

59. Plaintiffs' legal counsel also has other clients who have received spam from Defendants.

60. Not a single text message disclosed the name of the individual or the name of the entity on whose behalf the text messages were sent, even though such disclosure is required under the TCPA. The effect of omitting the names of the sender from the messages is to make it difficult to identify who sent the messages. Defendants did this purposefully to avoid detection and to avoid liability for illegal telemarketing.

61. Each Defendant was so involved in creating a platform that allows other users to violate the TCPA that Defendants are directly liable for spam sent by other users.

62. As the admins and creators of APEX SMS, Reyes, Tavilla, Sethi, Sotomayor, and Zamora provided a platform others can use to send illegal text messages.

63. As the admins and creators of APEX SMS, Reyes, Tavilla, Sethi, Sotomayor, and Zamora make money when other people send illegal text messages using APEX SMS.

64. As the admins and creators of APEX SMS, Reyes, Tavilla, Sethi, Sotomayor, and Zamora knew that the phone numbers in APEX SMS were randomly generated or illegally obtained.

65. As the admins and creators of APEX SMS, Reyes, Tavilla, Sethi, Sotomayor, and Zamora created a system to bypass spam filters and to allow marketers to send illegal telemarketing text messages to people who have not consented and who are on the DNCR.

66. As the admins and creators of APEX SMS, Reyes, Tavilla, Sethi, Sotomayor, and Zamora had the power to control how users sent text messages. Instead of using that control to ensure users complied with the TCPA, they created a system that enabled users to circumvent the TCPA, and to do so incognito.

67. These text messages have caused Plaintiffs frustration, stress, anxiety, and worry about scammers. The text messages hinder them from enforcing their rights to determine the purpose of the call, to make a do-not-call request, and to monitor compliance with the TCPA rules. The text messages cause them to avoid looking at their phones when it may be important and from answering calls. The text messages reduce their phones' storage and battery life. In short, the text messages invade their privacy, dimmish the value of their phones and their enjoyment of life, and cause a nuisance, an annoyance, and an intrusion into their seclusion.

## LEGAL STANDARD

68. **Autodialed Calls**. The TCPA provides that no person or entity shall make a call "using an automatic telephone dialing system or an artificial or prerecorded

voice… [t]o any… cellular telephone" unless the call is "made for emergency purposes or made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii); see also 47 C.F.R. § 64.1200(a)(1). If the call "introduces an advertisement or constitutes telemarketing" then "prior express written consent" is required. 47 C.F.R. § 64.1200(a)(2).

69. **Do Not Call Registry**. Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the DNCR. 47 C.F.R. § 64.1200(c). The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2).

70. **Failure to Identify Caller**. The TCPA prohibits callers from telemarketing to a residential telephone subscriber without disclosing the name of the individual caller and the name of the person or entity on whose behalf the call is being made. 47 C.F.R. § 64.1200(d)(4).

71. **Text message are calls**. Both phone calls and text messages qualify as a "call" under the TCPA. Satterfield v. Simon Schuster, 569 F.3d 946, 954 (9th Cir. 2009).

72. **Liability for Enabling TCPA Violations**. Even when a party does not make or initiate the calls, the party may still be liable if they were so involved in the placing of the calls as to be deemed to have initiated them. A court must look to the totality of the facts and circumstances, including the extent to which the defendant willfully enabled a violation of the TCPA, assisted therein, and knowingly allowed the use of its services for unlawful purposes. *Mey v. All Access Telecom, Inc.*, No. 5:19-CV-00237-JPB, 2021 WL 8892199, at *5 (N.D.W. Va. Apr. 23, 2021); *Hurley v. Messer*, 2018 WL 4927218 (S.D. W.Va. Oct. 10, 2018) (Chambers, J.) (Court denied dismissal of TCPA claims against defendant alleged to have knowingly allowed its autodialing

software to be used for an unlawful purpose); *Bauman v. Saxe*, 2019 WL 591439, at *6 (D. Nev. Feb. 13, 2019) (Court held that a text platform provider who offered functionality allowing clients to bypass spam filters faced potential TCPA liability).

73. **Vicarious Liability**. "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014); see also *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072 (9th Cir. 2019). Vicariously liable includes actual agency, apparent authority, and ratification. *Cabrera v. Gov't Emps. Ins. Co.*, 452 F. Supp. 3d 1305, 1316 (S.D. Fla. 2014) To state a plausible claim under a ratification theory, Plaintiff must allege facts showing that Defendant knew that its affiliate violated the TCPA and knowingly accepted the benefits of those violations. *Tuso v. Nat'l Health Agents, LLC*, No. 220CV02130JAMCKD, 2021 WL 2534220, at *4 (E.D. Cal. June 21, 2021). The ultimate determination is for a trier of fact to decide. *Johnson v. Unique Vacations, Inc.*, 498 F. App'x 892, 894 fn. 3 (11th Cir. 2012).

## CLASS ACTION ALLEGATIONS

74. Pursuant to Civ. R. 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs brings this action on behalf of themselves, and three Classes of persons similarly situated in order to remedy the ongoing unlawful business practices alleged herein and to seek redress on behalf of all those persons who have been harmed thereby, including injunctive relief.

75. Class Definitions. Plaintiffs propose the following Classes:

> **The Automated Calls Class**
> All people in the United States who (1) within four years prior to the filing of this action, (2) Defendants sent a text message to their cellular

telephone, (3) using the same equipment or type of equipment utilized to send text messages to Plaintiffs.

**The Do Not Call Class**
All people in the United States who (1) within the four years prior to the filing of this action, (2) Defendants sent more than one telephone solicitation via text message within any 12-month period, (3) to their residential cellular telephone number, (4) while listed on the national Do Not Call Registry.

**The Failure To Identify Class**
All people in the United States (1) who within four years prior to the filing of this action, (2) Defendants sent more than one telemarketing text message within any 12-month period, (3) to their residential cellular telephone number, (4) where the text message did not disclose the identity of the individual caller and the identity of the entity on whose behalf the call was made like the message sent to Plaintiffs.

76. A member of a class may sue as a representative party if the member satisfies Federal Rule of Civil Procedure 23(a)'s four prerequisites: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).

77. If Rule 23(a) is satisfied, a putative class representative must also show that the class falls into one of three categories under Rule 23(b). Fed. R. Civ. P. 23(b). For a Rule 23(b)(3) class, a plaintiff must make two further showings. First, a plaintiff must show that questions of law or fact common to class members predominate over any questions affecting only individual class members. *Id*. Second, a plaintiff must demonstrate class action is superior to other available methods for adjudicating the controversy. See, *Head v. Citibank, N.A.*, 340 F.R.D. 145, 149 (D. Ariz. 2022).

78. **Numerosity**. A proposed class satisfies the numerosity requirement if class members are so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). The numerosity requirement is not tied to any fixed numerical threshold. In general, courts find the numerosity requirement satisfied when a class includes at least

40 members. See, *Head v. Citibank, N.A.*, 340 F.R.D. 145, 149 (D. Ariz. 2022). Here, the Classes are so numerous that joinder of all members would be impracticable. The exact size of the Classes and the identity of the members are readily ascertainable from business records and likely number in at least the thousands as Defendants are believed to have sent millions of texts messages from a database of 80 million numbers.

79. **Commonality**. A proposed class satisfies Rule 23's commonality requirement if there is at least one question of fact or law common to the class. Fed. R. Civ. P. 23(a)(2). It is not a high standard. The claims must depend upon a common contention such that the determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. The Supreme Court has said the word question in Rule 23(a)(2) is a misnomer: What matters to class certification is not the raising of common questions but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. See, *Head v. Citibank*, N.A., 340 F.R.D. 145, 150 (D. Ariz. 2022).

80. There are questions of law and fact common to the proposed Classes. These questions include, inter alia:

i. Did they receive a text from Defendants?

ii. Was the number called registered on the Do Not Call Registry?

iii. Did Defendants use an Automatic Telephone Dialing System ("ATDS")?

iv. Were the calls for an emergency purpose?

v. Did the text message properly identify the sender?

vi. Were the actions willful or knowing?

81. **Typicality**. A proposed class representative's claims and defenses must also be typical of the class. Fed. R. Civ. P. 23(a)(3). The Supreme Court has recognized that the commonality and typicality requirements of Rule 23(a) tend to merge. Typicality

refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose, or the relief sought. Representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical. See, Head v. Citibank, N.A., 340 F.R.D. 145, 151 (D. Ariz. 2022)

82. Plaintiff's claims herein are typical of those of the Classes he seeks to represent. Plaintiff's and the Class members claims arise from the same conduct of Defendants: text message sent to people on the DNC registry, with no identification of the sender, and sent using an ATDS without express written consent.

83. **Adequacy of Representation**. The final prerequisite under Rule 23(a) requires that the Court must be satisfied that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This overlaps in practice with the requirement under Rule 23(g) that class counsel must adequately represent the interests of the class. Fed. R. Civ. P. 23(g). The inquiry under Rule 23(a)(4) asks two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Head v. Citibank, N.A.*, 340 F.R.D. 145, 152 (D. Ariz. 2022). Plaintiffs are adequate representatives of the Classes because their interests are common with the interests of the Classes, and they will fairly and adequately protect the interests of the Classes by pursuing this matter. Plaintiff is represented by counsel competent and experienced in TCPA and class action litigation.

84. **Predominance of Common Questions and Superiority**. A plaintiff may bring a class action under Rule 23(b)(3) only where questions of law or fact common to the class predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). If liability can be determined at a class-wide basis, common issues predominate.

This is true even if, at the damages stage, there remain non-injured class members and individualized damages calculations are required. *Head v. Citibank, N.A.*, 340 F.R.D. 145, 152–53 (D. Ariz. 2022). The final determination a court must make to certify a Rule 23(b)(3) class is that class action would be superior to individual actions in fairly and efficiently resolving the claims presented in this matter. Rule 23 enumerates four factors pertinent to determining whether class action is the superior method of litigation. First, the class members' interests in individually controlling the prosecution or defense of separate actions. Fed. R. Civ. P. 23(b)(3)(A). Second, the extent and nature of any litigation concerning the controversy already begun by or against class members. Fed. R. Civ. P. 23(b)(3)(B). Third, the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3)(C). Finally, the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(D). Where class wide litigation will reduce litigation costs and promote greater efficiency, a class action may be the superior method of litigation. *Head v. Citibank, N.A.*, 340 F.R.D. 145, 154 (D. Ariz. 2022).

85. The questions of law and fact common to the class members predominate over questions affecting only individual members. A class action is superior to multiple individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication, and deters illegal activities. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violation of the TCPA are small. Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

86. Managing this case as a class action should have no significant difficulties. The law applicable to each putative class member is identical. The facts are too. Ultimately, the basic questions in this case are the same for all class members. For The Automated Calls Class: Did Defendant call a putative class member without authorization using an ATDS? For the DNC Class the question for all members is: Did Defendant text a putative class member who was registered on the DNC registry? For the Failure to Identify Class, the question for all members is: Did Defendants properly identify themselves in the text? The common answer to these questions will determine Defendants liability. Precedent demonstrates these questions can be litigated on a class wide basis.

**FIRST CAUSE OF ACTION**

Violations of 47 U.S.C. § 227(b) & 47 C.F.R. 64.1200(a)
(On Behalf of Plaintiffs and the Automated Calls Class)

87. Defendants' use of an ATDS, artificial voice, or prerecorded voice to contact Plaintiff and members of the Automated Calls Class violated 47 U.S.C. § 227(b) and 47 C.F.R. 64.1200(a).

88. Defendants are liable because they sent or initiated the messages.

89. Defendants are liable because of their knowledge of the violations and assistance therein.

90. As a result, Plaintiffs and members of the Automated Calls Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

91. Because the violation was knowingly and willfully, the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B)-(C).

92. Plaintiffs and members of the Automated Calls Class are also entitled to injunctive relief prohibiting Defendants from using an ATDS, artificial voice, and prerecorded voice when sending telemarketing text messages without the prior express written consent of the called party.

**SECOND CAUSE OF ACTION**
Violations of 47 U.S.C. § 227(c) & 47 C.F.R. § 64.1200(c)
(On Behalf of Plaintiffs and the Do Not Call Class)

93. Defendants' telephone solicitations via text message to the residential cellular telephones of Plaintiffs, and members of the Do Not Call Class, while on the National Do Not Call Registry constitutes a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

94. Defendants are liable because they sent or initiated the messages.

95. Defendants are liable because of their knowledge of the violations and assistance therein.

96. As a result of the violation of 47 C.F.R. § 64.1200(c), Plaintiffs and members of the Do Not Call Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

97. Because the violations were knowingly and willfully, the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

98. Plaintiffs and members of the Do Not Call Class are also entitled to and seek injunctive relief prohibiting Defendants from sending telephone solicitations via text messages to phone numbers on the DNCR.

**THIRD CAUSE OF ACTION**

Violations of 47 U.S.C. § 227(c) & 47 C.F.R. § 64.1200(d)
(On Behalf of Plaintiffs and the Failure To Identify Class)

99. Defendants' sending of telemarketing text messages to the residential cellular telephones of Plaintiff, and members of the Failure To Identify Class, without disclosing the identity of the individual and identity of the entity on whose behalf the messages are sent, constitutes a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d).

100. Defendants are liable because they sent or initiated the messages.

101. Defendants are liable because of their knowledge of the violations and assistance therein.

102. As a result of the violations of 47 C.F.R. § 64.1200(d), Plaintiffs and members of the Failure To Identify Class have been damaged and are entitled to an award of $500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

103. Because the violations were knowingly and willfully, the court should award $1,500.00 in statutory damages for each violation, pursuant to 47 U.S.C. § 227(c)(5)(B)-(C).

104. Plaintiffs and members of the Failure To Identify Class are also entitled to and seek injunctive relief requiring Defendants to disclose the name of the actual individual and the actual name of the incorporated entity on whose behalf any text messages are sent when telemarketing.

**RELIEF REQUESTED**

105. Plaintiffs respectfully request that the Court grant Plaintiffs and all Class members the following relief against Defendants:

A. Certification of the proposed Classes;

B. Appointment of Plaintiffs as class representatives;

C. Appointment of the undersigned as counsel for the Classes;

D. An order enjoining Defendants from using an ATDS, artificial voice, and prerecorded voice when sending telemarketing text messages without the consent of the called party;

E. An order enjoining Defendants from sending telephone solicitations via text messages to phone numbers on the DNCR;

F. An order requiring Defendants to disclose the actual name of the individual as well as the actual name of the incorporated entity on whose behalf any text messages are sent when telemarketing;

G. An award of damages to Plaintiffs and the Classes, as allowed by law; and

H. Orders granting such other relief as the Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiffs requests a jury trial as to all claims of the Complaint so triable.

Dated August 8, 2022

Respectfully Submitted,

*/s/ Amy L. Bennecoff Ginsburg*
Amy L. Bennecoff Ginsburg
Attorney for Plaintiffs