**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joshua Champion; and Trent Alvord, | No. CV-22-01355-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Hameet Sethi; Jon Reyes; DeShawn Tavilla; Jessie Sotomayor; and Andrew Zamora, | |
| Defendants. | |

Plaintiffs Joshua Champion and Trent Alvord allege that Defendants sent numerous text messages to Plaintiffs in violation of the Telephone Consumer Protection Act ("TCPA"). Doc. 1. Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk has entered default against Defendants Hameet Sethi, Jessie Sotomayor, and Andrew Zamora. Doc. 28. Plaintiffs move for default judgment against these Defendants under Rule 55(b). Doc. 30. Sethi moves to set aside his default under Rule 55(c). Doc. 35. For reasons stated below, Sethi's motion will be denied and Plaintiffs' motion will be granted in part and denied in part.[1]

**I.    Background.**

According to Plaintiffs' complaint, Defendants created and controlled a massive text message spamming operation, APEX SMS ("APEX"). Doc. 1 ¶¶ 1, 4, 18-25, 61-66. Since

---

[1] Plaintiffs have dismissed their claims against Defendants Jon Reyes and DeShawn Tavilla. *See* Docs. 41, 42; Fed. R. Civ. P. 41(a)(1)(i).

1

at least 2018, APEX has been operated in Arizona under various names. *Id.* ¶¶ 2, 18, 32. When the spamming operation was exposed in May 2019, APEX had the randomly generated phone numbers of more than 80 million people stored in its database and had sent millions of automated text messages to nonconsenting recipients. *Id.* ¶¶ 1, 19, 34, 64.

Plaintiffs received hundreds of those messages without their consent and despite having registered their cell phone numbers on the national Do Not Call Registry ("DNCR"). *Id.* ¶ 5-6, 35-58. Champion received 540 messages and Alvord received 269. *Id.* ¶¶ 38, 54-58. The messages came from various phone numbers and contained random domain names. *Id.* ¶¶ 45-46. None of the messages disclosed the identity of the caller or the entity for which they were sent. *Id.* ¶ 60.

Plaintiffs assert three claims under the TCPA, 47 U.S.C. § 227, and its implementing regulations, 47 C.F.R. § 64.1200 et seq.: (1) calls made to cell phone numbers using an automatic telephone dialing system ("ATDS") in violation of §§ 227(b)(1) and 64.1200(a)(1); (2) solicitation calls made to phone numbers registered on the DNCR in violation of §§ 227(c) and 64.1200(c)(2); and (3) telemarketing calls made without disclosing the caller's identity in violation of §§ 227(c) and 64.1200(d)(4). *Id.* ¶¶ 68-72, 87-104. Plaintiffs seek enhanced statutory damages in the amount of $1,500 for each violation due to Defendants' alleged knowing and willful misconduct. *Id.* ¶¶ 91, 97, 103. Plaintiffs also request an injunction prohibiting Defendants from committing TCPA violations. *Id.* ¶¶ 92, 98.[2]

Defendants Sethi, Sotomayor, and Zamora were served with process in September 2022 (Docs. 17-19), but failed to answer or otherwise respond to the complaint. *See* Fed. R. Civ. P. 12. The Clerk entered default against these Defendants on December 28, 2022. Doc. 28. Plaintiffs moved for default judgment two days later. Doc. 30.

/ / /

/ / /

---

[2] The complaint contains class action allegations (*id.* ¶¶ 74-86), but Plaintiffs have not moved for class certification under Rule 23.

## II. Sethi's Motion to Set Aside Default.

Sethi was served with process on September 1, 2022. Doc. 17. Emails submitted by Plaintiffs show that Sethi's retained counsel was contacted by a lawyer representing Plaintiffs on October 13, 2022. Doc. 39-1 at 7. The lawyer noted that Sethi's answer was past due by a "couple of weeks." *Id.* Sethi's counsel acknowledged that "the Answer is overdue" and said he would have it filed by October 17, 2002. *Id.* at 6-7. When no answer was filed, Plaintiff's counsel informed Sethi's lawyer that he was considering filing for default and asked when an answer would be provided. *Id.* at 4. Sethi's lawyer "commit[ted] to an Answer" by October 28, 2022, but again failed to file. *Id.* After three weeks of not responding to inquiries from Plaintiff's counsel, Sethi's lawyer stated on November 18, 2022 that he expected an answer would be filed on November 21, 2022. *Id.* at 2. None was filed. Sethi's lawyer next said he would file on November 30, 2022, but he did not. *Id.* at 1. On December 16, 2022, in response to an order of the Court inquiring about the status of the case, Plaintiffs' counsel stated that Sethi had not answered despite repeated promises to do so and that Plaintiffs would be seeking default. Doc. 23. Sethi still failed to file an answer.

Plaintiffs filed an application for default on December 27, 2022, the clerk entered default the next day, and Plaintiffs' motion for default judgment was filed on December 30, 2022. Docs. 27, 28, 30. Sethi did not respond to any of these filings. Instead, on January 19, 2023, some four and one-half months after he was served, Sethi filed an answer that did nothing more than deny relevant allegations. Doc. 34. He also filed a motion to set aside the entry of default. Doc. 35. Sethi acknowledges that he did not file a timely answer and asserts that his "counsel was under the impression that he would be notified if Plaintiffs were planning to file for default." Doc. 35 at 2. This is plainly inaccurate given the repeated assurances Sethi's counsel gave to Plaintiffs' counsel that an answer would be filed, as well as Plaintiffs' counsel clear indications that default would be sought.

Rule 55(c) provides that a court may set aside an entry of default for "good cause." In deciding whether good cause exists, courts in the Ninth Circuit consider: (1) whether

the plaintiff will be prejudiced if the default is set aside, (2) whether the defaulted defendant has a meritorious defense, or (3) whether culpable conduct of the defendant led to the default. *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984); *see United States v. Aguilar*, 782 F.3d 1101, 1105-06 (9th Cir. 2015) (noting that these factors are often referred to as the "*Falk* factors" because they were first articulated in that case).[3] The defendant "bears the burden of demonstrating that all three [*Falk*] factors are satisfied[.]" *J & J Sports Prods., Inc. v. Franco*, No. 1:11-CV-1563-AWI-MJS, 2012 WL 3143888, at *4 (E.D. Cal. Aug. 1, 2012) (citing *TCI Grp.*, 244 F.3d at 696). Because the *Falk* factors are disjunctive, "a finding that the plaintiff will be prejudiced, *or* that the defendant lacks a meritorious defense, *or* that the defendant's own culpable conduct prompted the default is sufficient to justify the district court's refusal to vacate a default." *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988); *see also Brandt*, 653 F.3d at 1111; *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010); *Franchise Holding II, LLC. v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004); *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000).

Sethi fails to satisfy the second *Falk* requirement – some showing of a meritorious defense. As a result, his motion to set aside default will be denied.[4]

Under the second requirement, Sethi "is required to make some showing of a meritorious defense as a prerequisite to vacating an entry of default." *Haw. Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986); *see Brown v. China Integrated*

---

[3] Courts consider the same factors when deciding whether to set aside a default judgment under Rule 60(b)(1) based on "excusable neglect." *See Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011); *see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (when determining whether a party's neglect of a deadline is excusable courts should consider potential prejudice, length of the delay, reason for the delay, and whether the party acted in good faith); *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) ("[T]he *Falk* factors are . . . quite sufficient after *Pioneer Investment* to guide district courts' exercise of discretion under Rule 60(b)(1) in the context of default judgments.").

[4] Sethi's motion notes that a default may be set aside for good cause, but does not specifically address the *Falk* factors. *See* Doc. 35 at 2. Plaintiffs' response addressed the factors, Doc. 39 at 2-4, but Sethi filed no reply.

4

*Energy, Inc.*, No. CV 11-2559-MMM (PLAx), 2012 WL 12884911, at \*4 (C.D. Cal. July 12, 2012) (a court "cannot set aside a default without any suggestion that defendant has a meritorious defense"). This is because a court's "underlying concern is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Haw. Carpenters' Tr. Funds*, 794 F.2d at 513. Where "the defendant presents no meritorious defense, then nothing but pointless delay can result from reopening the [default]." *TCI Grp.*, 244 F.3d at 697.

Sethi asserts that setting aside his default "allows all parties to determine the legitimacy of Plaintiff[s'] claims as well as the defenses that may apply[.]" Doc. 35 at 2. This assertion is not sufficient. Sethi's burden under Rule 55(c) "is not extraordinarily heavy[,]" but he still "must present specific facts that would constitute a defense." *TCI Grp.*, 244 F.3d at 700 (citing *Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969)); *see Mesle*, 615 F.3d at 1094 (to satisfy "the 'meritorious defense' requirement" the defendant must "allege sufficient facts that, if true, would constitute a defense"). Sethi's motion identifies no such facts. *See* Doc. 35.

In response to Sethi's motion, Plaintiffs noted that he "has not made a showing of any meritorious defense or any facts that would constitute a defense against the allegations in the Complaint." Doc. 39 at 3. Rather than replying with such a showing, Sethi filed nothing. As a result, the Court has nothing before it to suggest Sethi has any colorable defense in this case, and the Court "will not 'manufacture' this argument for" him. *Aguilar*, 782 F.3d at 1108.

Sethi's untimely answer denies most of the complaint's allegations. *See* Doc. 34. But a mere "'denial without facts to support it' is not enough to justify vacating a default[.]" *Franchise Holding*, 375 F.3d at 926 (quoting *Madsen*, 419 F.2d at 6); *see Cassidy*, 856 F.2d at 1415 ("Mere legal conclusions, general denials, or simple assertions that the movant has a meritorious defense are . . . insufficient[.]") (cleaned up); *Am. Guarantee & Liab. Ins. Co. v. Irvine Auto Towing Inc.*, No. 20-CV-00264-JSW, 2021 WL 4459668, at \*5 (N.D. Cal. Mar. 26, 2021) ("Defendant's conclusory denial of false representations on its

insurance application without additional facts supporting the assertion is insufficient to establish a meritorious defense."). Sethi's answer reserves the right to assert unidentified affirmative defenses that may be revealed during discovery (*see* Doc. 34 at 11), but provides nothing to suggest that any specific defense would be meritorious. *See F.D.I.C. v. Twin Dev., LLC*, No. 10-CV-2279-BEN KSC, 2012 WL 1831639, at *3 (S.D. Cal. May 18, 2012) ("[A]lthough the General Denial also asserted affirmative defenses[,] . . . Twin makes no effort to explain how those affirmative defenses are applicable.").

The Court recognizes that "default is a drastic step appropriate only in extreme circumstances" and that "a case should, whenever possible, be decided on the merits." *Falk*, 739 F.2d at 463. But setting aside a default "in the absence of some showing of a meritorious defense would cause needless delay and expense to the parties and court system." *Haw. Carpenters' Tr. Funds*, 794 F.2d at 513; *see TCI Grp.*, 244 F.3d at 697. Thus, the "lack of meritorious defenses itself constitutes an extreme circumstance." *Aguilar*, 782 F.3d at 1107; *see G & G Closed Cir. Events, LLC v. Dailey*, No. 20-CV-03625-JSW, 2021 WL 4958091, at *1 (N.D. Cal. May 11, 2021).

Because Sethi has made no showing of a meritorious defense, it would be "an abuse of discretion to set aside the entry of default." *Haw. Carpenters' Tr. Funds*, 794 F.2d at 513; *see Aguilar*, 782 F.3d at 1109; *Franco*, 2012 WL 3143888, at *4. The Court accordingly will deny Sethi's motion. *See Franchise Holding*, 375 F.3d at 926 (affirming denial of a motion to set aside default judgment where the defendant "offered the district court only conclusory statements that a dispute existed"); *Twin Dev.*, 2012 WL 1831639, at *6 ("[B]ecause Defendants have failed to demonstrate a meritorious defense, their motion to set aside the entry of default . . . is denied."); *Am. Guarantee*, 2021 WL 4459668, at *6 ("because the Court has determined that . . . Defendant lacks a meritorious defense, the Court denies Defendant's motion to set aside default[.]"); *Ornstein v. Canites*, No. 18-CV-01616-PJH, 2018 WL 4538784, at *1 (N.D. Cal. Sept. 21, 2018) ("[T]he court will not set aside the Canites' defaults because the Canites have failed to articulate a meritorious defense to plaintiffs' claims."); *J & J Sports Prods., Inc. v. Juarez*, No. CIV. S-10-1071

WBS, 2011 WL 5241314, at *3 (E.D. Cal. Nov. 1, 2011) ("[D]efendant merely makes a blanket statement that she has 'a good and meritorious defense for [the] relief alleged.' She fails to present any specific facts that could constitute a defense to plaintiff's claims. Without such a showing, the default judgment cannot be set aside.") (citations omitted); *BRT Funding, LLC v. Carlsbad Dev. I, LLC*, No. 08-1151-PHX-FJM, 2009 WL 1606724, at *3 (D. Ariz. June 8, 2009) ("Defendants . . . have failed to present any defense to plaintiff's claims. Accordingly, we conclude that defendants . . . have failed to show 'good cause' why the entry of default should be set aside[.]").[5]

## III. Plaintiffs' Motion for Default Judgment.

After the Clerk enters a defendant's default, the Court may enter default judgment under Rule 55(b)(2). The decision whether to enter a default judgment is discretionary. *See Schmidt v. AmerAssist A/R Sols. Inc.*, No. CV-20-00230-PHX-DWL, 2020 WL 6135181, at *1 (D. Ariz. Oct. 19, 2020) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)). While the Court it is not required to make detailed findings of fact, *see Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002), it should consider several factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether default is due to excusable neglect, and (7) the policy favoring decisions on the merits, *see Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Plaintiffs move for default judgment jointly and severally against Defendants Sethi, Sotomayor, and Zamora. Doc. 30.[6] Plaintiffs argue that that the *Eitel* factors favor default judgment. Doc. 30-1 at 9-21. The Court agrees.[7]

---

[5] Because Sethi's default will not be set aside, his untimely answer (Doc. 34) will be stricken from the record. *See AT&T Intell. Prop. II, L.P. v. Puro*, No. 608CV-1032-ORL-28DAB, 2008 WL 4511023, at *1 (M.D. Fla. Oct. 7, 2008).

[6] "[T]he TCPA permits joint and several liability amongst co-tortfeasors." *Weisbein v. Allergan, Inc.*, No. CV-20-0801 FMO (ADSx), 2021 WL 1034979, at *5 (C.D. Cal. Mar. 16, 2021) (citing cases).

[7] No Defendant has filed a response to Plaintiffs' motion, and the time for doing so has expired. *See* LRCiv 7.2(c); Fed. R. Civ. P. 6(d).

### A. The *Eitel* Factors.

#### 1. Prejudice to Plaintiffs.

The first *Eitel* factor "considers whether the plaintiff will suffer prejudice if default judgment is not entered." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). This factor favors judgment where the defendant fails to answer the complaint because the plaintiff "would be denied the right to judicial resolution of the claims presented, and would be without other recourse for recovery." *Marquez v. Chateau Hosp., Inc.*, No. CV-20-0107 FMO (RAOx), 2020 WL 5118077, at *2 (C.D. Cal. June 11, 2020); *see PepsiCo*, 238 F. Supp. 2d at 1177.

Sethi has not timely answered the complaint or shown that he has a viable defense, and Sotomayor and Zamora have not appeared in this action despite being served with process more than six months ago. Because "default judgment is the only means to compensate Plaintiff[s], denial of Plaintiff[s'] request for default judgment will effectively immunize Defendants from liability [under the TCPA] and leave Plaintiff[s] without redress." *Osgood v. Main Streat Mktg., LLC*, No. 16cv2415-GPC(BGS), 2018 WL 11408584, at *2 (S.D. Cal. Mar. 21, 2018). The first *Eitel* factor favors default judgment. *See also Lyon v. Bergstrom L., Ltd.*, No. 1:16-cv-00401-DAD-SKO, 2017 WL 2350447, at *3 (E.D. Cal. May 31, 2017) ("Defendant's failure to file a valid and surviving Answer has stalled this litigation and potentially prejudiced Plaintiff by leaving her with no recourse to recover for any harm allegedly caused by Defendant's actions. The undersigned therefore finds that the first *Eitel* factor weighs in favor of the entry of default judgment."); *United States v. $86,496.00 in U.S. Currency*, No. CV-07-1693-PHX-DGC, 2008 WL 2687141, at *2 (D. Ariz. July 2, 2008) (finding that the plaintiff would be prejudiced absent default judgment where the defendant's answer had been stricken).

#### 2. Merits of the Claims and Sufficiency of the Complaint.

These *Eitel* factors are often analyzed together and require the Court to consider whether the complaint states a plausible claim for relief under the Rule 8 pleading standards. *See PepsiCo*, 238 F. Supp. 2d at 1175; *Best W. Int'l Inc. v. Ghotra Inc.*, No.

CV-20-01775-PHX-MTL, 2021 WL 734585, at *3 (D. Ariz. Feb. 25, 2021); *Danning v. Lavine*, 572 F.2d 1386, 1388-89 (9th Cir. 1978). A claim is plausible when it is brought under a cognizable legal theory and the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When applying these *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, [are] taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); *see also Oakley, Inc. v. Trillion Top Co.*, No. CV-17-01580-AG (MRWx), 2019 WL 3213751, at *2 (C.D. Cal. May 20, 2019) ("The [complaint's] allegations . . . are now deemed admitted, since Defendant's answer has been stricken.").

### a.   First TCPA Claim – Automated Call Violations.

Section 227(b) of the TCPA imposes restrictions on the use of automated telephone equipment and provides a private right of action for violations of the subsection and regulations prescribed thereunder. 47 U.S.C. § 227(b)(1), (3). With certain exceptions not relevant here, § 227(b) prohibits use of an ATDS to call a cell phone number unless the call is made with the consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(1) (same).[8] "The three elements of [this] TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an [ATDS]; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *see also Mabeza v. Ashfield Mgmt. Servs., Inc.*, No. 17-CV-1946-AJB-KSC, 2018 WL 1400778, at *2 (S.D. Cal. Mar. 20, 2018).

Plaintiffs allege that the phone numbers stored in APEX were randomly generated and Defendants used APEX to send text messages to Plaintiffs' cell phone numbers without

---

[8] To qualify as an ATDS, a device must have the capacity to store or produce phone numbers using a random or sequential generator, and to dial such numbers. 47 U.S.C. § 227(a)(1); *see Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

their consent.  Doc. 1 ¶¶ 6, 35-58, 64, 87-89.[9]  Taking these allegations as true, Plaintiffs have sufficiently stated a claim under § 227(b) of the TCPA.  *See Meyer*, 707 F.3d at 1043; *Osgood*, 2018 WL 11408584, at *4; *Doyle v. JTT Funding, Inc.*, No. CV18-06145 JAK (ASx), 2019 WL 13037025, at *6-8 (C.D. Cal. Dec. 2, 2019); *Drew v. Lexington Consumer Advoc.*, LLC, No. 16-CV-00200-LB, 2016 WL 1559717, at *4-6 (N.D. Cal. Apr. 18, 2016).

### b. Second TCPA Claim – DNCR Violations.

Section 227(c)(5) of the TCPA "affords a private right of action to any 'person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of' relevant regulations."  *Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2021 WL 1375837, at *6 (N.D. Cal. Apr. 12, 2021) (cleaned up); *see Drew*, 2016 WL 1559717, at *6.  One such regulation is 47 C.F.R. § 64.1200(c)(2), which provides that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national [DNCR]."  *See Osgood*, 2018 WL 11408584, at *4 *Mattson v. New Penn Fin., LLC*, No. 3:18-CV-00990-YY, 2020 WL 6270907, at *1 (D. Or. Oct. 25, 2020).[10]

Plaintiffs allege that they are residential subscribers of the relevant cell phone numbers, that they registered the phone numbers on the DNCR in 2019, and that Defendants thereafter sent or initiated multiple text-message solicitations to the phone numbers without Plaintiffs' consent.  Doc. 1 ¶¶ 35-58, 93-94.  Plaintiffs have "alleged sufficient facts to support a TCPA claim based on [their] national [DNCR] theory under § 227(c) and § 64.1200(c)."  *Orsatti v. Quicken Loans, Inc.*, No. 2:15-cv-09380-SVW AGR, 2016 WL 7650574, at *4 (C.D. Cal. Sept. 12, 2016); *see also Hoffman v. Hearing Help Express, Inc.*, No. 3:19-CV-05960-RBL, 2020 WL 4729176, at *3-4 (W.D. Wash. Mar. 27, 2020); *Rorty v. Quicken Loans Inc*, No. CV-12-00560-GAF (VBKx), 2012 WL

---

[9] "[A] text message is a 'call' within the TCPA." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *see Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

[10] Although the regulation refers to "residential" subscribers, it applies to calls made to cell phone numbers.  47 C.F.R. § 64.1200(e); *Drew*, 2016 WL 1559717, at *6.

12886842, at *7 (C.D. Cal. July 3, 2012) *Mattson*, 2020 WL 6270907, at *1; *Doyle*, 2019 WL 13037025, at *8-9; *Osgood*, 2018 WL 11408584, at *4.

### c. Third TCPA Claim – Identification Violations.

Another TCPA regulation promulgated under § 227(c)(5) provides that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller [and] the name of the person or entity on whose behalf the call is being made[.]" 47 C.F.R. § 64.1200(d)(4); *see Drew*, 2016 WL 1559717, at *6; *Charvat v. NMP, LLC*, 656 F.3d 440, 450 (6th Cir. 2011). Plaintiffs allege that not a single telemarketing text message they received from Defendants disclosed the name of the individual caller or the name of the entity on whose behalf the text message had been sent. Doc. 1 ¶¶ 39, 50, 60, 99. Plaintiffs state a plausible violation of § 64.1200(d)(4). *See Drew*, 2016 WL 1559717, at *7; *Roylance v. ALG Real Est. Servs., Inc.*, No. 5:14-CV-02445-PSG, 2015 WL 1522244, at *3 (N.D. Cal. Mar. 16, 2015).[11]

Taking the well-pled factual allegations as true, the complaint sufficiently states plausible claims for relief under the TCPA and its regulations. *See* Doc. 30-1 at 10-19. The second and third *Eitel* factors favor default judgment. *See Doyle*, 2019 WL 13037025, at *6-10.

### 3. Amount of Money at Stake.

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. *See PepsiCo*, 238 F. Supp. 2d at 1176. "Where the amount is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Doyle*, 2019 WL 13037025, at *10. Default judgment "is disfavored where the sum of money at stake is too large or unreasonable in light of

---

[11] Some courts have concluded that there is no private right of action for violations of § 64.1200(d)(4). *See Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at *7 (D. Md. Sept. 2, 2016) ("[Section] 64.1200(d)(4) is more appropriately viewed as setting procedural standards and, therefore, within the realm of the TCPA's subsection *d*, for which no private right of action exists."). But even if this is correct, the TCPA provides a private right of action for violations of §§ 64.1200(a)(1) and (c)(2) (*see* § 227(b)(3), (c)(5)), and Plaintiffs adequately plead violations of those regulations.

defendant's actions." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007); *see also Mabeza v. Ashfield Mgmt. Servs., Inc.*, No. 17-CV-1946-AJB-KSC, 2018 WL 1400778, at *3 (S.D. Cal. Mar. 20, 2018) (explaining that this *Eitel* factor is "meant to focus on the size of the award requested, as courts are hesitant to enter default judgments where large sums of money are at stake") (cleaned up); *Eitel*, 782 F.2d at 1472 (entry of a $3 million default judgment was not appropriate in light of the parties' dispute as to material facts).

Accepting the complaint's factual allegations as true, Defendants sent hundreds of text messages to each Plaintiff in violation of the TCPA. Because Plaintiffs seek statutory damages, this factor generally would support default judgment. *See G & G Closed Cir. Events LLC v. Espinoza*, No. CV-18-08216-PCT-JAT, 2020 WL 377095, at *3 (D. Ariz. Jan. 23, 2020) ("When a plaintiff seeks only statutory damages that consist of discretionary awards and statutory minimums this factor may weigh in favor of entering default judgment.") (cleaned up).

In this case, however, Alvord requests an award of $807,000 and Champion seeks $1,620,000. Doc. 30-1 at 21. Given the large awards Plaintiffs request, this factor weighs against default judgment. *See Osgood*, 2018 WL 11408584, at *5 (concluding that this factor weighed against default judgment where the plaintiff requested $1 million in damages under the TCPA).

### 4. Potential Factual Disputes.

"This factor turns on the degree of possibility that a dispute concerning material facts exists or may later arise." *Talavera Hair Prods., Inc. v. Taizhou Yunsung Elec. Appliance Co.*, No. 18-CV-823 JLS (JLB), 2021 WL 3493094, at *15 (S.D. Cal. Aug. 6, 2021) (citing *Eitel*, 782 F.2d at 1471-72). Where the defendant defaults, "the allegations in the well-pleaded complaint are presumed true and . . . there is no possible dispute of material facts." *D.A. v. Witt*, No. 2:17-CV-0337-MCE-DMC, 2021 WL 2802932, at *4 (E.D. Cal. July 2, 2021). Defendants Sotomayor and Zamora have done nothing to raise potential factual disputes. Defendant Sethi filed a belated answer, but he provided no basis

for concluding that he has a meritorious defense that would raise disputed issues of fact. The fifth *Eitel* factor supports default judgment. *See Doyle*, 2019 WL 13037025, at *10; *Osgood*, 2018 WL 11408584, at *5.

### 5. Whether Default Was Due to Excusable Neglect.

Plaintiffs have filed affidavits showing proper service of process on Sotomayor and Zamora. *See* Docs. 18, 19; Fed. R. Civ. P. 4(e). It therefore is "unlikely that [their] failure to answer and the resulting default was the result of excusable neglect." *Gemmel v. Systemhouse, Inc.*, No. CIV 04-187-TUC-CKJ, 2008 WL 65604, at *5 (D. Ariz. Jan. 3, 2008). This factor favors default judgment against Sotomayor and Zamora. *See Doyle*, 2019 WL 13037025, at *10.

Sethi asserts that his attorney failed to file a timely answer because he understood Plaintiffs would let him know if a default was to be sought. Doc. 35 at 2. In addition to the fact that such a position entirely disregards Sethi's legal duty to file a timely answer under the Federal Rules of Civil Procedure, this assertion is belied by the many emails exchanged between Plaintiffs' counsel and Sethi's lawyer. Those emails show that Sethi knew his answer was overdue, repeatedly promised to file it, and failed to do so until after default had been entered and Plaintiffs' motion for default judgment had been filed. Doc. 39-1. Sethi's default was not due to excusable neglect. This factor favors default judgment against Sethi.

### 6. Policy Favoring Decisions on the Merits.

Cases should be decided upon their merits whenever reasonably possible. *See Eitel*, 782 F.2d at 1472; *Falk*, 739 F.2d at 463. But Defendants' default "makes a decision on the merits impractical, if not impossible." *Gemmel*, 2008 WL 65604, at *5. And the mere existence of Rule 55(b), which expressly authorizes default judgment, indicates that the preference of resolving cases on the merits "is not dispositive." *Doyle*, 2019 WL 13037025, at *10 (quoting *PepsiCo, Inc.*, 238 F. Supp. at 1177). "[A]lthough this factor weighs against granting [Plaintiffs' motion], it does not require that result. A contrary rule would mean that a default judgment could rarely, if ever, be entered." *Id.*

### 7. **Summary of the *Eitel* Factors.**

A majority of the *Eitel* factors favors default judgment against each Defendant. The Court finds that default judgment is appropriate on Defendants' liability, but not at the level of relief Plaintiffs seek.

### B. **Plaintiffs' Request for Statutory Damages and Injunctive Relief.**

Sections 227(b) and (c) of the TCPA allow a plaintiff to recover $500 in statutory damages for each violation of those subsections or the regulations prescribed thereunder. *Id.*, § 227(b)(3), (c)(5). The Court has discretion to increase this amount to $1,500 if it finds that the defendant committed the violations willfully or knowingly. *Id.*; *see Osgood*, 2018 WL 11408584, at *4; *Doyle*, 2019 WL 13037025, at *6.

Champion seeks $1,620,000 in enhanced statutory damages. Doc. 30-1 at 3, 21. He claims that each of the 540 text messages he received from Defendants constitutes an ATDS violation under § 227(b), and requests $1,500 for each call, for a total of $810,000. Doc. 30-1 at 14. Champion further claims that each call violated § 227(c) and its regulations, §§ 64.1200(c)(2) and (d)(4), and seeks an additional $810,000. *Id.* at 17.[12]

Alvord seeks $807,000 for the 269 text messages he received – $403,500 for violations of § 227(b) and $403,500 for the § 227(c) violations. *Id.* at 14, 17, 21.

The Court need not simply accept the amount of damages Plaintiffs request in granting default judgment. *See Geddes*, 559 F.2d at 560 ("[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). Instead, "there must be an evidentiary basis for the damages sought by Plaintiff[s]." *Valenzuela v. Regency Theater*, No. CV-18-2013-PHX-DGC, 2019 WL 5721062, at *2 (D. Ariz. Nov. 5, 2019) (cleaned up); *see Osgood*, 2018 WL 11408587, at *1 (S.D. Cal. June 7, 2018) ("Allegations of damages must be proven. *See Geddes*, 559

---

[12] Treating violations of §§ 64.1200(c) and (d) as a single violation for purposes of damages is appropriate. *See Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, No. C-13-00229 JCS, 2013 WL 6571629, at *16 (N.D. Cal. Aug. 19, 2013) (concluding that the language of § 227(c) "indicates that a telephone call that violates more than one provision of the regulations is considered to be a single violation rather than multiple violations").

14

F.2d at 560.  The plaintiff is required to provide evidence of its damages[.]") (citations omitted).

Plaintiffs attach no exhibits or evidence to their motion and specifically identify only four of the 809 text messages they claim to have received from Defendants.  *See* Docs. 1 ¶ 40, 30-1 at 7-8.  Other than the allegations of their complaint, which need not be accepted in assessing damages, Plaintiffs provide no evidence to support the claimed number of unlawful calls or their assertion that the violations were willful and knowing.  Plaintiffs' "vague and conclusory" assertions simply do not support the amount of damages they seek.  *Heidorn*, 2013 WL 6571629, at *15.  Plaintiffs request injunctive relief, but present no evidence that Defendants continue to send them spam text messages.  *See* Doc. 30-1 at 3, 17.

The Court will not at this point grant Plaintiffs' motion in this regard.  Plaintiffs shall have until **April 21, 2023** to submit evidence in support of their requested damages and injunctive relief.  *See Justice v. Fidelis Recovery Mgmt., LLC*, No. 2:18-CV-3107-TLN-DMC, 2020 WL 2744582, at *2 (E.D. Cal. May 27, 2020) ("Neither the complaint nor the declarations filed in support of plaintiff's motion . . . establish the number of calls defendant made or caused to be made in violation of the TCPA.  In order to discharge the Court's duty to ensure the amount of damages awarded is reasonable and supported by evidence, *see Geddes*, 559 F.2d at 560, plaintiff will be granted an opportunity to provide additional evidence to support the request for treble statutory damages under the TCPA.").

**IT IS ORDERED:**

1. Defendant Sethi's motion to set aside default (Doc. 35) is **denied** and his untimely answer (Doc. 34) is **stricken** from the record.

/ / /

/ / /

/ / /

/ / /

/ / /

2. Plaintiffs' motion for default judgment (Doc. 30) is **granted** with respect to Defendants' liability on the TCPA claims and taken under advisement with respect to damages and injunctive relief. Plaintiffs shall have until **April 21, 2023** to submit evidence to support their requests for statutory damages and injunctive relief.

Dated this 30th day of March, 2023.

David G. Campbell
Senior United States District Judge